IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYSHON FARMER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAUREL HARRY, et al[1] | : | NO. 12-1404 |

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY, U.S.M.J.   January 30, 2013

This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by Rayshon Farmer, who is currently incarcerated at the State Correctional Institution in Camp Hill, Pennsylvania. For the reasons that follow, I recommend that the petition be denied.

## I.   FACTS AND PROCEDURAL HISTORY

On March 17, 2005, after a trial before the Honorable Peter Rogers of the Court of Common Pleas of Philadelphia County, a jury convicted Farmer of first degree murder relating to the August 23, 2001 shooting of William Speedwell. N.T. 3/17/05 at 2.[2] The trial court summarized the facts as follows:

---

[1] At the time Farmer filed his habeas petition, Richard Southers was the superintendent of the State Correctional Institution at Camp Hill and Farmer properly named Mr. Southers as the respondent in his petition. In July 2012, Laurel Harry was named as the superintendent. Therefore, I have amended the caption to name Ms. Harry as the respondent. See Rules Governing Section 2254 Cases, Rule 2 (requiring that the current custodian be named as the respondent).

[2] The Superior Court mistakenly noted that the verdict was returned on March 9, 2005. See Commonwealth v. Farmer, No. 1665 EDA 2005 at 2 (Pa. Super. Feb. 7, 2007). Review of the transcript reveals that voir dire was continuing on March 9, and that the verdict was not returned until March 17, 2005.

The sole eyewitness for the prosecution was James Christie who testified that he was outside of a bar in North Philadelphia on the night of August 23, 2001, and that he was sitting with the decedent, William Speedwell. He told the jury that he was approached by [Farmer], who he knew as "Shon," who reached out to shake his hand. He stated that as [Farmer] used his right hand to shake hands, he used his left hand to pull out a handgun from his waistband or pocket. Mr. Christie testified that [Farmer] immediately began shooting at the decedent who was still sitting next to him.

The witness said that [Farmer] was accompanied by another man who he knew by the name "Jamal." Jamal walked up to Mr. Christie and the decedent with [Farmer], and he also brandished a handgun. He testified that he did not know if Jamal had fired any shots because he had gotten up and ran from the scene after [Farmer] began shooting at the decedent.

When he returned a few minutes later, the decedent was lying on the ground and appeared to have several gunshot wounds on his body. Upon his return to the scene, Mr. Christie then saw Mark Burnett, his brother-in-law and the decedent's uncle, standing in front of the bar where the shooting had taken place. He told Mr. Burnett what had happened, and that [Farmer] was the person who had shot his nephew.

During his trial testimony, Mr. Christie admitted to being a drug dealer, and talked about the drug trafficking that took place at the corner where the bar was located. He testified about an incident that had occurred the night before where a friend of [Farmer's], "Amir," was involved in a shootout with another drug dealer from that area, "S." During that exchange of gunfire, Amir was wounded and was taken to the hospital by his friends. Mr. Burnett also testified about the August 22nd shootout, and stated that he also witnessed the entire incident.

There was no allegation by Mr. Christie or Mr. Burnett that [Farmer] was involved in the shootout, but he was present that night and was in the company of both Amir and Jamal. The witnesses contended that the shootout was prompted by a struggle over who was going to "control" the corner, and that the decedent's fatal shooting was in retaliation for what had happened on the night of August 22nd at that same corner.

Commonwealth v. Farmer, Cr. No. 0066 1/1, April Term, 2003, Opinion at 2-4 (Phila. C.C.P. Dec. 15, 2006). On April 28, 2005, Judge Rogers sentenced Farmer to life imprisonment. N.T. 4/28/05 at 5.

On May 3, 2005, Farmer filed a timely direct appeal, claiming that the evidence was insufficient to sustain the verdict, the verdict was against the weight of the evidence, and the court impermissibly admitted evidence of other crimes/bad acts. Judge Rogers issued an opinion recommending affirmance, and on February 7, 2007, the Superior Court affirmed the judgment of sentence. Commonwealth v. Farmer, Cr. No. 0066 1/1, April Term 2003 (Phila. C.C.P. Dec. 15, 2006); Commonwealth v. Farmer, No. 1665 EDA 2005 (Pa. Super. Feb. 7, 2007). Farmer filed a petition for allowance of appeal on February 22, 2007, which was denied on September 12, 2007. Commonwealth v. Farmer, No. 88 EAL 2007 (Pa. Sept. 12, 2007).

On December 18, 2007, Farmer filed a petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. C.S.A. §§ 9541-9551. In an amended petition filed by appointed counsel on January 28, 2009, Farmer presented five claims of ineffective assistance of counsel, including the claim he presents in his habeas petition -- ineffective assistance of counsel for eliciting inadmissible hearsay testimony from James Christie, the Commonwealth's main witness. See Commonwealth v. Farmer, No. CP-51-CR-0400661-2003, Amended Post Conviction Relief Act Petition (Phila. C.C.P. filed Jan. 28, 2009). On July 15, 2009, Judge Rogers dismissed the petition without a hearing.

3

Commonwealth v. Farmer, No. CP-51-CR-0400661-2003, PCRA Dismissed Order (Phila. C.C.P. Jul. 15, 2009).

In his timely appeal to the Superior Court, Farmer presented the claim that his counsel was ineffective for eliciting hearsay testimony from James Christie. Commonwealth v. Farmer, No. CP-51-CR-0400661-2003, Statement of Matters Complained of on Appeal (Phila. C.C.P. filed Mar. 12, 2010). Judge Rogers issued an opinion explaining his reasons for dismissing the petition, and on October 19, 2010, the Superior Court affirmed the denial of PCRA relief. Commonwealth v. Farmer, Cr. No. 0066 1/1, April Term 2003 (Phila. C.C.P. May 10, 2010); Commonwealth v. Farmer, No. 2535 EDA 2009 (Pa. Super. Oct. 19, 2010). On November 18, 2010, Farmer filed a petition for allowance of appeal. On June 20, 2011, the Pennsylvania Supreme Court denied the petition. Commonwealth v. Farmer, 704 EAL 2010 (Pa. June 20, 2011).

On March 10, 2012,[3] Farmer filed this petition for habeas corpus and a memorandum of law again claiming the he was denied the effective assistance of counsel when his trial counsel elicited and failed to object to inadmissible hearsay testimony. See Doc. 1. Farmer also filed copies of three of the statements James Christie gave to police.

---

[3] The petition was docketed on March 16, 2012. However, the federal court employs the "mailbox rule," deeming the petition is deemed filed when given to prison authorities for mailing. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)). Farmer signed his petition on March 10, 2012, and I will assume that he gave the petition to prison authorities for mailing on that date.

4

See Doc. 11.  The District Attorney has filed a response, and Farmer filed a reply.  See Docs. 17 & 20.  The case is ripe for review.[4]

## II.  LEGAL STANDARD FOR MERITS REVIEW

The federal courts' habeas review is limited in nature.  The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts.  Id. at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).  Pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct, rebuttable only by clear and convincing evidence.  Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

---

[4]Farmer has also filed three motions, which I will address in the last section of this Report.

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). With respect to "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## III. DISCUSSION[5]

In his habeas petition, Farmer alleges that his trial counsel was ineffective for eliciting hearsay testimony from a Commonwealth witness that further implicated Farmer in the shooting death of William Speedwell, and failing to object to that testimony.

---

[5]Farmer's petition is timely filed. His conviction became final on December 11, 2007, when the time for filing a certiorari petition in his direct appeal expired. He filed his PCRA petition 7 days later, tolling the habeas limitations period. See 28 U.S.C. § 2244(d)(2). The Pennsylvania Supreme Court denied Farmer's petition or allowance of appeal on June 20, 2011, at which time the habeas limitations period resumed running with 358 days remaining. He filed his habeas petition 264 days later on March 10, 2012. Thus, the petition is timely filed.

Additionally, Farmer exhausted his ineffective counsel claim by presenting it to the trial court in his PCRA petition and the appellate courts in his collateral appeal.

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687. Additionally, the Court has cautioned that strategic choices made by counsel are presumed reasonable. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment. Id. at 681. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In considering Farmer's claim on collateral appeal, the Superior Court, relying on the PCRA court's decision, found that counsel was not ineffective in his examination of Commonwealth witness James Christie.

> We conclude the PCRA court correctly determined that trial counsel was not ineffective with regard to his cross-

> examination of Christie. The PCRA court, who also presided
> at trial, correctly found that trial counsel had a reasonable
> basis for his actions, specifically, eliciting from Christie the
> testimony that logically put the credibility of his testimony, as
> a whole, in serious doubt.

Commonwealth v. Farmer, No. 2535 EDA 2009 at 8 (Pa. Super. Oct. 19, 2010). After reviewing the trial testimony, I conclude that the Superior Court's decision is neither contrary to nor an unreasonable application of Strickland, and did not involve an unreasonable determination of the facts.

The evidence at trial established that the victim died as a result of two gunshot wounds – one to his chest and one to his back. N.T. 3/10/05 at 64-66. The key evidence linking Farmer to the shooting was the testimony of eyewitness James Christie. Id. at 76.[6] Mr. Christie testified that on the night of August 23, 2001, he, Mr. Speedwell, and another man named Kirby were sitting on the steps next to Benny's Bar at 4th and Norris Streets in Philadelphia when Farmer and Jamal Bunion[7] walked around the corner. Id. at 82-84. According to Mr. Christie, he and Farmer greeted one another and were shaking hands when Farmer pulled a gun from his waistband with his left hand and shot Mr. Speedwell. Id. at 54.

The key defense strategy involved challenging Mr. Christie's credibility, which defense counsel did extensively on cross-examination. Counsel questioned him about his

---

[6] Christie explained that the victim, William Speedwell, was his brother-in-law's nephew. N.T. 3/10/05 at 74-75.

[7] Throughout the testimony Jamal Bunion is referred to as "Jamal" or "Mal." N.T. 3/10/05 at 158-59.

8

prior convictions, his open cases, his mental status at the time of the incident, and the inconsistencies in the multiple statements he gave to the police regarding the shooting. According to the trial testimony, Mr. Christie had given four statements to the police. N.T. 3/10/95 at 119.[8] In the first, which he gave on the night of the incident, he did not identify the shooter. Id. at 95. Two days later, on August 25, 2001, Mr. Christie gave a second statement during which he identified Farmer as the man who shot Mr. Speedwell. Id. at 98. Mr. Christie explained that he did not want to "snitch," but that between the time he gave the first and second statements, the victim's mother had told him that she did not want any more bloodshed and asked him to go to the police. Id. at 97, 110.[9]

In these two statements, Mr. Christie stated that Jamal Bunion had fired shots at him (Christie) as he ran from the scene immediately following the shooting of Speedwell. N.T. 3/10/05 at 99, 155-56, 159. Subsequently, in a February 6, 2003 statement taken while he was incarcerated, Mr. Christie was asked about Jamal Bunion's role in the shooting. Id. at 158. During that interview, Mr. Christie seemed to deny Mr. Bunion's role.

> Yeah, but I'm not sure if Mal [Jamal Bunion] fired. I was running away and I hear a couple of shots, but that was including the shots fired by [Farmer] at [Mr. Speedwell].

---

[8]The statements were not introduced into evidence, but Mr. Christie was asked about them during his testimony. Farmer has provided copies of three of these statements. See Doc. 11, Exhs. A (August 25, 2001), B (February 6, 2003), C (August 24, 2001).

[9]During the trial, the jury heard testimony regarding a drug related shooting the night before at the same corner, during which a man known as "S," who ran the drug corner, shot a friend of Farmer's named Amir. N.T. 3/10/05 at 114-15, 183-86.

9

Id. at 159 (quoting the February 6, 2003 statement).

Defense counsel seized upon this discrepancy and the following exchange occurred.

> Q. Okay. And is it your testimony here today that you're sure that Jamal had nothing to do with this?
> A. No, Jamal – I seen Jamal at 8th and Norris and I was like – that's when I had my gun on me. I was – Jamal, what's up? What happened? And that's when he was like, no, you know, [Farmer] was all high when he came around and did that.
> Q. So Jamal was blaming [Farmer]?
> A. No, he was saying like he ain't know he was going to do that, he was all high and that's what he said he was going to come down and talk to the detectives and all that.
> Q. Okay. So let's try to put this in perspective.
> It's your testimony that [Farmer] and Jamal approach you correct?
> A. Yes.
> Q. You first tell the police that Jamal Bunion fired at you, correct?
> A. Yes.
> Q. Okay. And how long do you know Jamal Bunion for?
> A. For – I know him for a little bit longer than [Farmer].
> Q. Well, how much is a little bit longer? You knew him for a couple of days?
> A. No, I knew him more.
> Q. More, I'm sorry. How long did you know Jamal?
> A. I don't know. I knew him for more than a couple days, though.
> Q. Okay. So the fella that you know for longer says, hey, listen, I ain't have nothing to do with shooting at you, we're going to blame the other guy, right?
> A. No, he was just like – he was like, no, he said – I know he didn't do it. He said he didn't know he was going around to do that. They came around looking for Vernon, and by [Farmer] not knowing, he didn't know Vernon really well,

so he was just trying to prove something and he shot William
by mistake.

N.T. 3/10/05 at 159-60. Defense counsel returned to this point a few pages later in the testimony, focusing on Christie's changing stories about Jamal's role:

> Q. How would lying on Jamal prevent bloodshed?
> A. Jamal, I didn't mean like to lie on Jamal. I was confused at the time. I thought that he really did fire at me. You know, I thought he did, but it wasn't like I was scared or anything like, or, I'm scared because he's on the streets or anything like that. No.
> Q. Sir, were you equally confused on the evening that this happened when you were doing drugs, doing alcohol, sitting here probably in a stupor when somebody comes up and opens fire and you really didn't know who it was, isn't that the real truth?
> A. No, I seen who it was.
> Q. You seen who it was?
> A. And that's why I asked around the neighborhood like what happened and that's when Jamal told me, no, he was high. He came around to shoot Vernon. He thought Willie was Vernon and because they both light skin.
> Q. You mentioned the name Vernon. Was Vernon there?
> A. No, but Vernon was there the day before when everything happened. He supposed to set Amir up to get shot up and there was a bunch of retaliation.
> Q. Was Vernon there?
> A. If you don't know Willie, he kind of like favor Vernon a little bit, so you can mistake him if you don't really look at him. If you just – Mal, if he – just like Mal said, he was high and stuff, he would have mistakenly shot him.

Id. at 167-69.

Farmer's argument focuses on the hearsay statement of Jamal Bunion, identifying Farmer as the person who shot William Speedwell. However, this testimony was part of defense counsel's meticulous dissection of Mr. Christie's statements and challenge to his

11

credibility by showing the multiple discrepancies and lies in the statements. The Superior Court, quoting the opinion of the PCRA court, explained counsel's strategy:

> If trial counsel's extensive and blistering cross-examination of Mr. Christie is put into context, it is obvious that counsel had a sound and reasonable basis for this line of questioning. Mr. Christie had initially identified "Jamal" as the person who had shot at him, but he testified at trial that he had lied about that because "Jamal" had nothing to do with any part of the incident. With this line of questioning, trial counsel was able to demonstrate that Mr. Christie had admittedly lied to the police, and very well could be lying about [Farmer's] participation in the shooting of the decedent.
>
> TRIAL COUNSEL: When you spoke to the police, though, is it not fair to say that you led them to believe that a second man, Jamal Bunion, fired shots at you.
>
> MR. CHRISTIE: Yeah.
>
> TRIAL COUNSEL: All right. And when you told them that originally, were you trying to tell the truth or were you trying to deliberately lie?
>
> MR. CHRISTIE: I was lying to them.
>
> [N.T. 3/10/05 at 153].
>
> Trial counsel was also able to convey to the jury through his cross-examination that Mr. Christie had known "Jamal" much longer than he knew [Farmer], that he was vey [sic] likely in fear of "Jamal," and that he changed his story about the incident as a result of these factors. Thus, trial counsel cannot be deemed ineffective "if a reasonable basis exists for the particular course chosen." Commonwealth v. Abdul-Salaam, 808 A.2d 558, 561 (Pa. 2001).

Commonwealth v. Farmer, No. 2535 EDA 2009 at 7-8 (Pa. Super. Oct. 19, 2010) (quoting Commonwealth v. Farmer, Cr. No. 0066 1/1 at 8-9 (Phila. C.C.P. May 4, 2010)).

12

Review of the trial transcript supports the state courts' determination. Defense counsel made a strategic choice to attack Mr. Christie's credibility by attacking the inconsistencies in his statements, including the allegation that Jamal Bunion had shot at him. Although the result was that Mr. Christie presented hearsay further implicating Farmer in the shooting, defense counsel's strategy was sound. "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Roland v. Vaughn, 445 F.3d 671, 682 (3d. Cir. 2006). The only hope the defense had was to undermine Mr. Christie's credibility. Defense counsel attempted to do just that by questioning Mr. Christie about his prior convictions, open cases, his state of mind at the time of the shooting, and the inconsistencies in his statements. Thus, I find no error in the Superior Court's determination of this claim.[10]

In his argument, Farmer makes much of the fact that, although Christie first implicated Farmer two days after the shooting, Christie did not talk to Jamal Bunion until two weeks later, suggesting that Christie's interaction with Bunion could not have had anything to do with Christie's identifying Farmer as the shooter. See Docs. 1 at 5; 1-1 at

---

[10]To the extent Farmer claims his counsel should have objected to Mr. Christie's recitation of Jamal Bunion's hearsay statement, see Doc. 1-2 at 2-3, I also find no merit to the claim. Although the Superior Court did not address this portion of the claim separately, it is clear that counsel strategically chose not to object. The defense needed to challenge Mr. Christie's credibility. If counsel had objected to that portion of Mr. Christie's testimony it would have drawn attention to the statement and left the jury with the idea that there was some truth to Jamal Bunion's statement. Instead, defense counsel stuck to the strategy of portraying Mr. Christie as completely unreliable. Guided by Strickland, I will not second-guess counsel's strategy.

13-15; 1-2 at 9-10; 20 at 8-9. Farmer uses this argument to undermine the logic of defense counsel's credibility attack. Essentially, Farmer characterizes defense counsel's argument as a fruitless attempt to suggest that Jamal somehow frightened or influenced Christie to falsely implicate Farmer, and thus argues that counsel needlessly elicited the damaging testimony in pursuit of an illogical argument. The necessary implication of Farmer's argument is that counsel could have effectively challenged Christie's credibility without wading into his prior statements, which is simply not true. Jamal's statement identifying Farmer first came in when defense counsel questioned Mr. Christie about a discrepancy in his statements about Jamal allegedly shooting at him, which counsel absolutely had to venture into to challenge Christie's credibility. Additionally, counsel's strategy of suggesting Mr. Christie's allegiance to Bunion over Farmer was sound, regardless of the timing of the statements.

Although not listed as a separate habeas claim, Farmer also contends that his trial counsel was ineffective for failing to interview and question Mr. Christie about his conversation with Jamal Bunion prior to trial. See Docs. 1-1 at 14-15; Doc. 20 at 9.[11] If construed as a habeas claim, this contention would be unexhausted because Farmer did not present this claim to the state courts. See Commonwealth v. Farmer, Cr. No. CP-51-0400661-2003, Amended PCRA Petition (Phila. C.C.P. filed Jan. 28, 2009); Commonwealth v. Farmer, No. 2535 EDA 2009, Statement of Matters Complained of on

---

[11]Pinpoint citations in the documents electronically filed with the court refer to the ECF pagination.

Appeal (Pa. Super. filed Mar. 12, 2010). Because Farmer now has no avenue through which to present the claim to the state courts, see 42 Pa.C.S.A. §§ 9545(b) (one year statute of limitations), 9544(b) (waiver), it is procedurally defaulted and he has not given the federal court any basis to excuse that default. See Coleman v. Thompson, 501 U.S. 722, 735 (1990) (default occurs when a petitioner fails to exhaust state remedies and the state court would now find the claim barred).[12]

In his memorandum of law, Farmer also alleges that the introduction of Jamal Bunion's statements resulted in a violation of the Confrontation Clause, recognized by Crawford v. Washington, 541 U.S. 36 (2004). See Doc 1-1 at 11-12. This claim is similarly unexhausted and Farmer has offered no argument to excuse the default.[13]

## IV. MISCELLANEOUS MOTIONS

On July 9, 2012, Farmer filed a motion to expand the record, seeking leave to send interrogatories to his trial counsel about his investigation and trial strategy. See Doc. 4 at 6-8. Discovery in habeas cases is not automatic. Rule 6(a) of the Rules Governing Section 2254 Cases states that "a judge may, for good cause, authorize a party to conduct

---

[12]Farmer's claim is undermined on the merits by the fact that in his February 6, 2003 statement, Mr. Christie told police that Bunion implicated Farmer in the shooting, thus there is every reason to believe that counsel was aware of the danger. See Doc. 11 Exh. B at 4.

[13]Farmer's Crawford claim is also meritless. Under Crawford, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination. Id. at 53-54. However, Crawford has no applicability to a casual remark to an acquaintance, such as Bunion's statement to Christie, because such statements are not considered testimonial. United States v. Berrios, 676 F.3d 118, 127-28 (3d Cir. 2012).

15

discovery under the Federal Rules of Civil Procedure and may limit the extent of such discovery. The Supreme Court has interpreted good cause to mean that discovery will be permitted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Peterkin v. Horn, 30 F. Supp.2d 513, 516 (E.D. Pa. 1998) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)).

In this case, clearly defense counsel's strategy was to undermine the credibility of the Commonwealth's star witness. For the reasons already discussed, the questions Farmer proposes to ask trial counsel would not provide any basis for habeas relief. Thus he is not entitled to discovery.

On December 26, 2012, Farmer filed a motion for an evidentiary hearing. See Doc. 21. Farmer contends that "an adequate record upon which to evaluate Trial Counsel's performance has not yet been developed," and he requests an evidentiary hearing to establish that counsel's failure to object to the hearsay "was based on a lack of diligence rather than an exercise of judgment." Doc. 21 at 1-2, 6-7.

AEDPA prohibits the federal court from holding an evidentiary hearing if the petitioner failed to develop the factual basis for the claim in the state court. See 28 U.S.C. § 2254(e)(2). In his motion, Farmer contends that he attempted to develop the claim, but was denied a hearing in litigating his PCRA petition. See Doc. 21 at 6. Even assuming Farmer attempted to develop his ineffective counsel claim in the state courts, the federal court should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to

16

federal habeas relief." Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir. 2010) (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

Such is not the case here. Farmer contends that counsel failed to object based on a lack of diligence, arguing again that counsel should have determined that Mr. Christie identified Farmer as the shooter before speaking with Jamal Bunion. Had counsel recognized this, Farmer posits, counsel would not have attempted the line of questioning that led to the admission of the hearsay. See Doc. 20 at 32. However, as noted, Mr. Christie first mentioned Mr. Bunion's statement when counsel was attempting to undermine Christie's credibility by establishing that he lied to the police regarding Bunion's shooting at him, which counsel had no choice but to do.

Moreover, as previously mentioned, had counsel objected to the statement, the jury easily could have concluded that there was truth to this portion of Mr. Christie's testimony. Finally, a finding that counsel improperly failed to object to the hearsay does not satisfy Strickland's prejudice prong. At the end of the testimony, the jury believed Mr. Christie. An objection to this hearsay would not have undermined his credibility such that the outcome of the trial would have been different. Therefore, Farmer is not entitled to an evidentiary hearing.

Farmer also filed a motion for summary judgment premised upon the District Attorney's failure to file a timely response. See Doc. 10. After I had extended the deadline, a response to Farmer's habeas petition was due on September 24, 2012. See Doc. 9. The District Attorney failed to comply with that deadline, but subsequently

17

sought permission to file a response out of time, which I granted considering the circumstances outlined in the motion.  See Docs. 12 & 13.

I note that a default judgment, as Farmer's motion essentially requests, is not an appropriate remedy for a respondents' delayed Answer.  See Goodman v. Keohane, 663 F.2d 1044, 1047 n.4 (11th Cir. 1981); United States v. Dill, 555 F. Supp.2d 514, 520-21 (E.D. Pa. 2008) (Surrick, J.).  I therefore recommend that Petitioner's motion for summary judgment be denied.

Therefore, I make the following:

# RECOMMENDATION

AND NOW, this 30th day of January 2013, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be denied. There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. IT IS FURTHER RECOMMENDED that Petitioner's Motion for Summary Judgment (Doc. 10) be DENIED, and Petitioner's motions to expand the record and for an evidentiary hearing (Docs. 4 & 21) be DENIED. Petitioner may file objections to this Report and Recommendation. <u>See</u> Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ELIZABETH T. HEY
_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE